Good morning, your honors. I'm Charles Nickel, appearing before the respondent Martin Cornejo-Merida. This, again, is a claim of asylum based upon homosexuality. It's a different country. It's Peru. Different facts. This is an individual who, a young man who suffered a long period of abuse and sexual molestation growing up. In his early 20s, he frequented homosexual bars in Lima. He stated that when he was there, he would see police rounding up and beating persons who were gay. He states on page 114 of the administrative record that when he was at Friendship Square, which is a homosexual area in Lima. Are you arguing that he suffered past persecution? He, only to the extent that he was confronted, bribed by a police officer with the threat that he would basically lose his family by having him report that he was homosexual. His family did not know that he was gay. His family did not know of the abuse. Yes or no, are you? Yes. I'd make that claim. You're saying that's what constitutes past persecution, the threat that they would tell his family? It could, your honor, if it means basically that he's going to lose his parents and cultural differences that might make him completely ostracized. And that is what he believed would occur. All right. I'm just trying to identify what it is you're claiming. You are claiming past persecution on the basis that they would tell his parents and that would have these consequences you've described. Yes. He also had witnessed people who were similarly situated to him being beaten. He stated that they would gather the gays, put them in patrol cars. They would get out their clubs, start holding them and hitting them. Someone would run. Some would run away. Others would scream. I saw that and just went into the stores and I watched everything through the store. After having witnessed this, he was approached by a police officer who extorted money from him and threatened to tell his parents that he was gay. And petitioner has never disclosed it to his parents and knows that he would be ostracized in that family. The board in its denial, it reversed part of the immigration judge's decision. The judge, the board dismissed the notion that his recollections of his early abuse were entitled to diminished weight and were less reliable because he was young. And the board found that there was no scientific basis for that. The reason I ask the original question is I gather it isn't you are not no longer contending this. At some point, I thought you were contending that the child sexual abuse was past persecution. You're not arguing that. It was not. I have not argued that, Your Honor, because it was I mean, he's an adult. He did suffer that in the past from his family. But I don't know that that would be. Well, I guess we could make that argument. We could say that it's nice if you knew what your arguments were. Well, no, you got here. When did you prepare for this argument? I prepared for this argument. I had this case. Well, then tell us what your arguments are. The police, the police have not will not protect a gay man in Peru. He as a child, he had no one to turn to. He attempted to speak to the school officials and they would do nothing for him. He considered continued having severe abuse and rape throughout his childhood. The you did not have police who would protect him. And he knows the facts. We read the briefs. That's why I asked you the question. We want to know what you were contending. What's your theory that he suffered as a member of a particular social group? He suffered past persecution and he has a well-founded fear of future persecution, that it's based not only upon his own experiences as a child, but also the fact that he witnessed people who are in the same situation as he is in being beaten and harmed by the police authorities who would ordinarily be assigned to protect citizens of their country. Yet he could certainly not turn to them for protection based upon his knowledge that the of what they did to persons like him and the fact that they attempted to extort money from him and that he would have he would have no protection. The Board of Immigration Appeals in their decision noted that that with regard to future persecution, that they found consistent. His information was consistent with articles contained in the record, which showed that people had been attending gay bars, had had been detained by the police, actually hundreds of people. And based upon this under Cardozo versus Fonseca, the the standard for deciding whether someone has a well-founded fear of persecution would be, would a reasonable person facing this this applicant's situation have a 1 in 10 belief that they could be harmed upon return to their country, given the lifelong abuse which this applicant has endured and the fact that the police, the very people who should be protecting him, extorted money from him, and he has seen that they will go to further extents and inflict harm upon gays. He'd certainly have substantially more than a 1 in 10 reasonable basis for believing that he would suffer such harm. That is my argument. I have three minutes. I'd like to reserve that for rebuttal. Fine. Thank you. Thank you. May it please the Court, James Grimes for the Attorney General. Your Honors, Cornell's claims, I think, can essentially be divided into two categories, neither of which support a showing that this, the record compels reversal. The first is the abuse he endured at the hands of his family, and the second is the later discrimination and harassment that he witnessed or was involved with later in his life. The first category really doesn't seem to be in the brief, and we seem to have been told this morning that it's not the basis for the arguments. I'm sorry, Your Honor? The first category does not really seem to be in the brief, as I understand it. I'm, I'm, I understand what you're saying, and it appears that Petitioner is now arguing that it might support the claim. And so I would just like to state that because, as the agency determined below, because the government didn't know about it, because it's not government, not connected with the government, it doesn't support a showing of persecution. But in any event, that takes us to the events later in Mr. Cornell's life, which include being picked on by fellow students, watching other people being arrested, and then the extortion to which he referred to this morning. I don't believe any of those constitute persecution. I say that primarily because he was never detained, he was never beaten. He really wasn't subjected by, to any treatment by the government, with the exception of the extortion event, which I'll get to. Now, he was picked on and hit by his fellow students. I think that that's really not more than you would expect any students to endure at the hands of mean-spirited students. And I take issue with Mr. Cornell's statement that his teachers did not help him. He testified at pages 110 and 111 of the record that he went to his teachers about the abuse by his fellow students, not the abuse by his parents, but being picked on by his fellow students, and the teachers intervened. Now, it's true the students continued to pick on him, but he didn't tell the teachers again. That was his testimony, I believe, at pages 111 and 112. But you jumped over one issue. Do you agree that he's a member of a protected social group? I don't think, again, that this is the – that – What's the government's position? Well, the government's position is the Board hasn't addressed whether or not he's a member of a social group in this case. I don't believe – I could be wrong, but I don't believe that that's what the – Is it an issue as to whether he's a gay man, or is there an issue as to whether a gay man in Peru is a particular social group? Is that the issue in this case, Your Honor? I'm asking you in what sense has – what issue has the BIA and the IAJ not addressed? Whether or not he's a member of a social group. I think the agency decided that even if he were, he hasn't shown persecution. Because he may not be a member – he may not be a gay man, or he may not – well, gay men may not be a social group in Peru. I don't think – I think that the Board has said that gay homosexuals could be a group. Potentially, and this Board said that in Hernandez Montiel. Well, certainly, you don't think the IAJ found that he was, in fact, a gay man? Oh, I'm sure – I have no doubt that he's gay. Well, what is your view? You say the Board has found that gays may be a social group. Potentially so, and I believe this Board has said the same in Hernandez Montiel. What does that mean? You have to prove it country by country? Or when is it and when is it not a social group? Well, I suppose the short answer is it is when the immigration – excuse me, when the Attorney General says it is, but not to be flipped. But that's – that's – Well, once he says it was in one country, I don't remember. Our case involved a particular country. I believe it was Mexico, and I think that was the added factor that this was a homosexual man with a female sexual identity. And so I think the concern may be that – I'm sorry. Attorney General has also said it in other cases. How is he limited when he said gays are a social group? Has he done it in a particular country, or has he done it by gays who are openly gay or visibly gay or have a feminine appearance? Or what's the group that the Attorney General has identified? I don't know specifically what was said in – I think it's Toboso. Yeah. So I can't specifically answer Your Honor's question because – and the reason I can't is because I don't think that it's an issue that was addressed in this case. I think assuming – It wasn't addressed. The question is do you have to if you've already ruled that X is a social group? Say all people who have three years are a social group. If you've said that once, do you have to make that finding each time you get people with three years? I suppose that if the Board had defined a social group, as Your Honor is saying, that – The Board – I mean, neither the Board nor the IJ really suggested in any way that this was in dispute, whether he was a member of a social group. I don't think it's – I don't think it is a dispute. I don't think it's really the issue. But you asked to remand for something. What are we remanding for with regard to the question of whether he was a member of a social group? The IJ's whole opinion seems to be premised on the notion that he was. I mean, it doesn't seem to be a finding because it doesn't seem to have been in dispute. And similarly with regard to the BIA. So what are we remanding for? I don't believe – I think the attorney who wrote the brief suggested that if you were to disagree with the determination that he hasn't shown past persecution – I understand that. Now you're supporting that position? You don't think that the IJ and the BIA have already – on the understanding that there is a general rule now that the BIA is applying that gay men in a particular country is a social group. The whole assumption of everybody in this case has been, of course, it's a social group. I think that was the assumption. It's something that he was – Are you now standing up here and suggesting that there's something we have to remand for about that? Well, I don't think that the Board has specifically addressed the issue. So I think that if – in this case. So I think that you would if you didn't agree with the past persecution determination. But, again, the past persecution determination is well supported by the record. You don't have persecution with respect to being picked on by fellow students. He did witness other people being arrested, presumably in 1996, because that's what the country reports reflect, page 225. But nothing happened to him. He wasn't arrested. He wasn't beaten. And so that takes us to the extortion. And the extortion was – he says he was recognized in his brief as part of the homosexual nightclub scene. What really happened was he was at a nightclub, and so he was approached at the nightclub. He wasn't recognized out on the street. He was approached at the nightclub. And the police officer – the person who said he was a police officer came up to him and said, Pay me money or I'm going to tell your family that you're gay. I don't believe that a desire for money or a desire to shame someone or embarrass someone or Cornelio's fear of rejection by his family is grounds for asylum. It's not one of the five grounds that's listed in the statute. And the immigration judge dismissed this as a one-time encounter with a corrupt official at page 55 and determined this was merely harassment. Well, given that nothing else ever happened, there was no threat of violence, there was no violence, that's exactly what this was, a one-time event by a rogue official. Now, I know that the petitioner cites De Seer v. Ilchert, which says that extortion could be a grounds for asylum. But in De Seer, you had a case in which this court said that – we're talking about Haiti. Haiti was set up as a kleptocracy, is what this court said. And so, therefore, if you oppose extortion, you're really opposing the government. Well, the government of Peru is not a political system founded on homophobia, so De Seer would not apply. And, in fact, in De Seer, there was also beatings and arrests that supported the claim. So in the end, Mr. Cornejo has not met his burden of proof. He has not shown that the record compels reversal.  Pardon me, Your Honor? Well, you're asking me to get – he hasn't shown that. He hasn't shown really anything. He's certainly a member of a group that has been discriminated against in Peru and in this country, but that does not relieve him of his burden to show that he deserves asylum and withholding. He hasn't done that. And because he hasn't done that, he is not entitled to asylum and withholding before this court. Unless there are any further questions, that concludes the government's presentation. Thank you, counsel. Just briefly, as far as the issue of – you mentioned that he was not actually beaten by the police, but well-founded fear of persecution has never required actual physical harm. It only goes to the issue of whether or not he has reason to believe that he would be harmed. And you say that all that he had experienced from the police up to that point had been extortion, but based on what he had seen happening to other people who were in the same situation as him, is it reasonable to expect that he is going to wait around and be taken into a car and beaten up? Does he have to – he doesn't have to show that he put himself in harm's way and was subjected to actual physical abuse in order to meet his burden for establishing persecution, in this case based upon his membership in a particular social group. And the BIA has noted that country conditions are – his arguments are supported by country conditions contained in the record. And does the court have any other further questions? Okay. Thank you. Thank you, counsel. Case is argued to be submitted. The court will take a brief recess. Thank you.  Well, if they're set for an hour and a half, they won't make it out of here much well. It starts by itself. Tape recording. Yeah, there's no transcript. You can get a copy of the recording if you want it. Where's the bulletin? Reinhard can be very difficult. Yeah. It's about 2%. It's about 2%. Absolutely.
judges: Reinhardt, Paez, Berzon